447 P.2d 556

Pamela GEYER, Appellant,

v.

RESERVE INSURANCE COMPANY,
a corporation, Appellee.

No. 2 CA–CIV 546.

Court of Appeals of Arizona.

Nov. 22, 1968.

Rehearing Denied Dec. 20, 1968.

Review Denied Jan. 21, 1969.

Miller, Pitt & Feldman, by, Stanley G. Feldman, Tucson, for appellant.

May, Dees & Newell, by, Paul F. Newell, Tucson, for appellee.

MOLLOY, Judge.

This declaratory judgment suit requires us to determine if an injured passenger, who was an "omnibus insured" under the driver's liability policy, may have the cumulative benefit of the liability and uninsured motorist coverages under the policy, in spite of provisions in the policy purporting to reduce the amount payable under one of the coverages by any sums paid to the injured person under the other coverage.

The plaintiff-appellant, Pamela Geyer, was a passenger in a car driven by William Bullock when it was involved in an accident with another car driven by Dorothy Lenz. It is undisputed here that Dorothy Lenz, at the time of the accident, was an uninsured motorist within the meaning of that term as used in 7 A.R.S. § 20–259.01, as amended. It is likewise undisputed that appellant, as a passenger in the Bullock car, was an "omnibus insured" under the policy issued by appellee and, as such, is entitled to the benefit of the uninsured motorist coverage.

The policy in question was issued to Bullock in Arizona in 1966. It provided bodily injury liability coverage in an amount up to $10,000 for injuries to one person. The uninsured motorist endorsement, for which Bullock paid an additional premium, also provided coverage in an amount up to $10,-000 for injuries to one person.

Appellant has commenced separate suits against William Bullock and Dorothy Lenz,

alleging that negligence on the part of the respective defendant resulted in her injuries. Appellant's complaint in this delaratory judgment action sought an adjudication establishing appellee's liability to her under the uninsured motorist endorsement of the policy. The only determination sought here is whether appellee has an ultimate possible liability to appellant in the amount of $10,000, as appellee contends, or $20,000, as appellant contends.

Appellee stands on the provisions of its endorsement and its contention that they unambiguously and lawfully provide a maximum liability of $10,000 payable to one person, even if both William Bullock and Dorothy Lenz are found to be liable to appellant in an amount exceeding that figure. Appellant concedes, as she must, that, if either William Bullock or Dorothy Lenz *alone* is found to be liable to her, then she may not recover more than $10,000 under the policy. Appellant contends, however, that, if both William Bullock and Dorothy Lenz are found liable to her,[1] and if her damages for which both are responsible exceed $10,000, then, in that event, she can recover all of her actual damages, up to $20,000, from appellee under its policy and the endorsement which is a part thereof. The trial court held that appellee's maximum liability to appellant under both coverages was $10,000.

■ Appellant has urged, in a well-argued brief, that, in spite of their first-blush clarity, the policy provisions are at least ambiguous and that their terms do not limit appellee's liability to $10,000, if both the insured and uninsured motorist are liable to her. It is unnecessary for us to pass upon that contention because it is clear to us that appellant is entitled to prevail on her alternative contention that, even if the terms of the policy and endorsement clearly purport to limit appellee's total liability to $10,000, they cannot lawfully accomplish that purpose, in view of the terms of the uninsured motorist statute prescribing the minimum amount of coverage to be made available.

The uninsured motorist statute, A.R.S. § 20–259.01, enacted in 1965, reads as follows:

"On and after January 1, 1966, no automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle, shall be delivered or issued for delivery in this state, with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in § 28–1142, under provisions filed with and approved by the insurance director, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. This coverage shall at the time the policy is issued be called to the attention of the named insured who shall have the right to reject such coverage. Unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer."

The minimum limits referred to in A.R.S. § 28–1142 are $10,000 for each person and $20,000 for each accident. There is no claim by appellee that its named insured rejected in any manner, or to any degree, the full coverage required to be offered.

Appellant relies upon decisions construing a similar statute from the State of

---

1. Subsequent to the ruling on appeal, appellant recovered a judgment in the amount of $65,000 from both William Bullock and Dorothy Lenz, which judgment is now on appeal *sub nom.* Bullock v. Geyer, 2 CA–CIV 638.

Florida, and the public policy of Arizona, as announced by our Supreme Court in Sandoval v. Chenoweth, 102 Ariz. 241, 428 P.2d 98 (1967); Carpenter v. Superior Court, 101 Ariz. 565, 422 P.2d 129 (1966); and Jenkins v. Mayflower Insurance Exchange, 93 Ariz. 287, 380 P.2d 145 (1963).

The Florida courts have held that the minimum coverage requirement in a similar act contemplates an effective coverage in that amount, and that an insurer issuing uninsured motorist coverage cannot lawfully decrease the statutory minimum coverage by offset provisions in the policy. *See* Southeast Title and Insurance Company v. Austin, 202 So.2d 179 (Fla.1967); and Phoenix Insurance Company v. Kincaid, 199 So.2d 770 (Fla.App.1967), approved in Tuggle v. Government Employees Insurance Company, 207 So.2d 674 (Fla.1968).

The Supreme Court of Oregon, likewise, has taken the view that workmen's compensation benefits cannot be offset against uninsured motorist coverage. In arriving at its decision in Peterson v. State Farm Mutual Automobile Ins. Co., 238 Or. 106, 393 P.2d 651 (1964), the court discussed the nature of the coverage required by its uninsured motorist statute in the following terms:

> "The basic purpose of the uninsured motorist provision seems clear. It provides protection for the automobile insurance policyholder against the risk of inadequate compensation for injuries or death caused by the negligence of financially irresponsible motorists. * * * In other words, the legislative purpose in creating compulsory uninsured motorist coverage was *to place the injured policyholder in the same position he would have been in if the tortfeasor had had liability* insurance." (Emphasis added)
>
> 393 P.2d at 653.

The court, in *Peterson*, held that the Insurance Commissioner of the State of Oregon had no authority to approve offset provisions in a policy which would reduce the uninsured motorist coverage below the minimum set forth in the statute.

Using language similar to that quoted from *Peterson*, the Supreme Court of Nebraska refused to allow an offset in Stephens v. Allied Mutual Insurance Company, 182 Neb. 562, 156 N.W.2d 133 (1968); and a federal district court in Arkansas recently reached a similar conclusion under that state's uninsured motorist coverage statute. See Carter v. Saint Paul Fire and Marine Insurance Company, 283 F.Supp. 384, 388-390 (E.D.Ark.1968).

There are authorities taking a contrary view which uphold the right of the insurer to make offsets against uninsured motorist coverage. See Morgan v. State Farm Mutual Automobile Ins. Co., 195 So.2d 648 (La.App.1967); and Durant v. Motor Vehicle Accident Indem. Corp., 15 N.Y.2d 408, 260 N.Y.S.2d 1, 207 N.E.2d 600 (1965). In the latter case, the court relied upon a portion of the statute creating the Motor Vehicle Accident Indemnity Corporation, which authorized its board of directors to prescribe the conditions of coverage subject to the approval of the state's Superintendent of Insurance. There was a strong dissent by Chief Judge Desmond, echoed in large part by Chief Judge Fuld, in a concurring opinion, in the later case of Napolitano v. Motor Vehicle Acc. Ind. Corp., 21 N.Y.2d 281, 287 N.Y.S.2d 393, 234 N.E.2d 438 (1967).

In California, a statute passed sometime subsequent to enactment of that state's compulsory uninsured motorist coverage provision expressly grants to insurers the right to make offsets against the uninsured coverage. California Insurance Code § 11580.-2(g). While an opinion of the California Attorney General gave approval to offset provisions prior to passage of the authorizing statute, see Eliopulos v. North River Insurance Company, 219 Cal.App.2d 845, 33 Cal.Rptr. 449, 454 (1963), we are not aware of any California judicial decision which passed upon the legality of offset provisions prior to that time.

■ This court has had occasion to note that our uninsured motorist statute is a strongly worded statutory mandate. Maryland Casualty Company v. Wilson, 6 Ariz. App. 470, 433 P.2d 650 (1967). We have also taken cognizance of its remedial purposes. Kraft v. Allstate Insurance Company, 6 Ariz.App. 276, 431 P.2d 917 (1967), opinion modified, rehearing denied, 6 Ariz. App. 326, 432 P.2d 470 (1967).[2] The statute requires a liberal interpretation which will effectuate its purposes. Bryant v. State Farm Mutual Automobile Ins. Co., 205 Va. 897, 140 S.E.2d 817 (1965).

■■ Our Supreme Court has made it clear in its *Sandoval, Carpenter* and *Jenkins* decisions, supra, that it regards the claims of automobile accident victims to funds created by insurance as interests of the highest protectible order. While those opinions have been the subject of criticism, see the dissenting opinions of Mr. Justice Bernstein in *Sandoval* and *Carpenter*, they remain intact as strong expressions of the public policy of our state. They indicate to us that Arizona will be nowhere but in the forefront of jurisdictions in making available to automobile accident victims the fullest benefits of insurance coverage. Especially as compared with *Jenkins*,[3] nothing in the nature of a strained construction is required to hold that the minimum limits of our uninsured motorist legislation are a part of every policy issued containing such coverage, and that the prescribed

limits cannot be reduced by offsetting policy provisions.

In reaching the result indicated, we are aware that our uninsured motorist statute does not absolutely require coverage, i. e., an issuee is entitled to reject the coverage. The fact that an issuee may reject the coverage altogether does not mean that, if he fails to reject it, his coverage can be any less than the stated minimal amount. The apparent intent of the legislature was to provide for uninsured coverage in the stated minimum amount, unless the coverage was rejected altogether. Both the Florida and Arkansas statutes contain a right of rejection like that in § 20–259.01. See the dissenting opinion of Barns, J., in Tuggle v. Government Employees Insurance Company, 207 So.2d at 676, 679; and Carter v. Saint Paul Fire and Marine Insurance Company, 283 F.Supp. 384, 385 (E.D.Ark. 1968).

We add, for emphasis, that all that has been said herein is applicable only to the extent of the total legal damages of the claimant. Nothing we have stated in this opinion is to be construed as permitting or tending to permit a "double recovery" or windfall to the insured under separate coverages in excess of her actual legal damages.

The judgment of the trial court is reversed.

HATHAWAY, C. J., and KRUCKER, J., concur.

2. A belated contention was made in *Kraft* that an offset provision against uninsured motorist coverage in a policy issued by Travelers Insurance Company was invalid. The parties had entered into a stipulation which gave effect to the provision. This court declined to pass upon the contention because the validity of the provision had not been placed in issue. 6 Ariz.App. at 327, 432 P.2d at 471.

3. It is noteworthy, though only parenthetical to our decision here, that, while the Supreme Court of Florida has strongly upheld the minimum coverage provisions of its uninsured motorist act, as indicated above, it rejected the conclusion reached by our Supreme Court in *Jenkins* that the minimum financial responsibility provisions of our Safety Responsibility Act applied to a pre-accident or pre-certification policy. See Lynch-Davidson Motors v. Griffin, 182 So.2d 7 (Fla.1966).