724 P.2d 70

**The ARIZONA PROPERTY AND CASU- ALTY INSURANCE GUARANTY FUND, Plaintiff-Appellee,**

**v.**

**Judith Mae UEKI, Defendant-Appellant.**

**No. 1 CA–CIV 8734.**

Court of Appeals of Arizona, Division 1, Department B.

Aug. 14, 1986.

**452**

Holloway & Thomas, P.C. by Benjamin C. Thomas and Nicholas E. Vakula, Phoenix, for plaintiff-appellee.

Phillips & Lyon, P.A. by Seth Andrew Broder, Phoenix, for defendant-appellant.

HAIRE, Judge.

Appellant Judith Mae Ueki has appealed from summary judgment granted in favor of appellee Arizona Property and Casualty Insurance Guaranty Fund (Fund) in the Fund's action for a declaration that it had no obligation to pay appellant's claim arising out of a liability policy issued by an insolvent insurer, Ambassador Insurance Company. The central issue on appeal involves a determination of whether, under the circumstances of this case, A.R.S. § 20–673(C) requires that appellant's claim against the fund be reduced by the amount she had recovered under other applicable insurance coverage.

The operative facts are undisputed. At the time of the occurrence of the single vehicle accident which resulted in appellant's injuries, Henry Ueki, Sr. was driving a vehicle owned by Jack Pudlas, and appellant was riding as his passenger. The parties have agreed throughout this litigation that appellant sustained damages in excess of $15,000.

At the time of the accident Henry Ueki, the allegedly negligent driver, was insured under a liability policy issued by Rockwood Insurance. The policy's liability limits were $15,000 per person and $30,000 per accident. Mr. Pudlas and his vehicle were insured under a policy issued by the Ambassador Insurance Company. The liability limits of the Ambassador policy were $15,-000 as applied to appellant. At some point after the accident, Ambassador became insolvent and was placed in receivership. Pursuant to A.R.S. § 20–661 *et seq.*, the Fund succeeded Ambassador in connection with appellant's claim against Henry Ueki.

Rockwood Insurance paid appellant its policy limit of $15,000 in partial settlement of her claim against Ueki. Thereafter, the Fund filed this action seeking a declaration that under A.R.S. § 20–673(C) the Fund's maximum possible liability of $15,000 under the Ambassador policy was entirely offset by the $15,000 appellant had received from Rockwood Insurance, and that accordingly the Fund could not be liable to appellant in any amount. Appellant moved to dismiss the complaint for failure to state a claim upon which relief could be granted, and the Fund countered with a motion for summary judgment. The trial court denied appellant's motion to dismiss and entered summary judgment in favor of the Fund.

■ An analysis of the Fund's obligations relating to appellant's claim must begin with a consideration of A.R.S. § 20–667. A.R.S. § 20–667(A) provides that the Fund is obligated "to the extent of the covered claims" that exist during specified periods of time with reference to the determination of the insurer's insolvency. It is undisputed that appellant's claim arose during one of the specified periods and therefore obligated the Fund. To the extent pertinent here, § 20–661(3) defines "covered claim" as meaning "an unpaid claim ... which arises out of and is within the coverage of an insurance policy" issued by the insolvent insurer. The Fund's obligation on covered claims is further limited to a maximum of $100,000. *See* A.R.S. § 20–667(B). In the instant case the amount of coverage under the Ambassador policy was $15,000. Since under the statutory definition, a "covered claim" is limited to a claim "within the coverage" of the insolvent insurer's policy, the maximum amount of appellant's "covered claim" would be $15,000. *See also*, A.R.S. § 20–667(B) ("In no event shall the fund be obligated ... in any amount in excess of the face amount of the policy....").

A.R.S. § 20–673(C) provides that the "amount payable on a covered claim shall be reduced by the amount of such recovery under other applicable insurance." [1] Since appellant had already received $15,000 from Henry Ueki's insurer, the trial judge applied § 20–673(C) and concluded that the Fund's obligation on appellant's $15,000 "covered claim" had been reduced to zero. The trial court did not view this result as contrary to the intent of the statutes, because it was "unable to find any indication the purpose of the guarantee fund is to make injured persons whole."

Appellant disputes this latter conclusion by the trial judge, pointing to language in the purpose clause of the original act "[t]he purpose of this act is ... *to avoid financial loss* to claimants or policyholders because of the insolvency of an insurer...." (Emphasis added). Laws 1970, ch. 78, § 1. We note, however, that even in the original act there were limitations on the Fund's liability, thereby conflicting with a literal reading of the purpose clause. Additional-

---

1. A.R.S. § 20–673(A), (B) and (C) provide:

"A. Any person having a claim against an insurer under any provision in an insurance policy which is also a covered claim shall be required to exhaust first all rights under such policy. Any amount payable on a covered claim pursuant to this article shall be reduced by the amount of such recovery under the claimant's insurance policy. A member insurer or other insurer, which pays such insurer's own policy, shall have no right of subrogation or recovery against the insured of an insolvent insurer.

"B. Any person having a claim which may be recovered under more than one insurance guaranty fund or its equivalent or who is insured under more than one policy, shall seek recovery first from the fund of the place of residence of the insured or, if it is a first-party claim for damage to property with a permanent location, from the fund of the location of the property, or shall first exhaust coverage under such other policy. Any recovery pursuant to this article shall be reduced by the amount of the recovery from any other insurance guaranty fund or its equivalent or under another policy. Covered claims by subscribers of an insolvent reciprocal insurer shall not be paid until all subscribers have been assessed pursuant to § 20–791.

"C. Where more than one policy may be applicable, a policy issued by the insolvent insurer shall be deemed to be excess coverage. The claimant shall be required to exhaust all rights under other applicable coverage or coverages. Any amount payable on a covered claim shall be reduced by the amount of such recovery under other applicable insurance."

ly, there have been subsequent amendments which further restrict the Fund's liability. In any event, the purpose clause no longer retains any viability. In 1977, the entire original act was repealed, and the purpose clause was not reenacted. *See* Laws 1977, ch. 130, § 1.

In support of her argument that the trial court erred in its interpretation of A.R.S. § 20–673(C), appellant notes that the first sentence of A.R.S. § 20–673(C) expressly deems an insolvent insurer's policy to be "excess coverage." She reasons that it is the very nature of an excess clause that the excess insurer has no liability until the primary coverage is exhausted, but that once the primary carrier has paid its policy limit, the excess carrier is liable to the limit of the excess coverage for damages beyond the primary carrier's limit. She apparently concludes that because the Fund's liability is "excess coverage" by statute, the Fund must be held liable to the Ambassador policy's $15,000 limit for any damages appellant may prove in excess of the $15,000 limit under the Rockwood policy.

Appellant also relies heavily on A.R.S. § 20–667(C), which provides that the Fund "is deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent."[2] She apparently interprets this language to mean that the Fund must pay the entire amount of the covered claim up to the lesser of $100,000 or the insolvent insurer's policy limit, as long as the claimant does not receive a double recovery.

In our opinion appellant's arguments constitute an evasion of the governing statute's clear terms. Subsection (C) of A.R.S.

§ 20–673 provides not only that the insolvent insurer's policy is to be deemed excess coverage, and that the claimant must exhaust all rights under other applicable coverages, but also: "Any amount payable on a covered claim shall be reduced by the amount of such recovery under other applicable insurance." This sentence is concise and unambiguous. We have already discussed the statutory definition of "covered claim." The words "such recovery" clearly refer to any amounts which might be recovered under other "applicable" policies referred to in the first two sentences of subsection (C). The words "other applicable insurance" just as clearly refer to other policies applicable to the occurrence which forms the basis for the claim against the insolvent insurer. Therefore, under subsection (C) when a claimant recovers money under other insurance coverage, the amount of the claimant's "covered claim" the Fund would otherwise have to pay must be reduced by the amount the claimant has recovered under other applicable insurance. In this case, where the Fund's exposure was no greater than $15,000, and appellant collected the sum of $15,000 from an insurance policy that applied to her claim against Henry Ueki, the amount which the Fund would otherwise have had to pay on appellant's covered claim was reduced by that sum, leaving a zero balance.

Contrary to appellant's reasoning, A.R.S. § 20–667(C) is fully consistent with this reading of A.R.S. § 20–673(C). Section 20–667(C) provides in pertinent part: "The fund is deemed the insurer to the extent of its obligation on the covered claims...." Appellant seems to assume that the phrase "its obligation" refers to the insurer's obligation, and thus interprets the statutory

---

**2.** A.R.S. § 20–667, provides in part:

"A. The fund is obligated to the extent of the covered claims existing during any of the following periods:

\* \* \* \* \* \*

"B. Such obligation shall include only that amount of each covered claim which is in excess of one hundred dollars and is less than one hundred thousand dollars, except that the fund shall pay any covered claim in unearned

premiums of twenty-five dollars or more. In no event shall the fund be obligated to a policyholder or claimant in any amount in excess of the face amount of the policy from which the claim arises.

"C. The fund is deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent."

language to impose on the Fund all the contractual duties to which the insurer would have been subject had it not become insolvent. We cannot agree. The word "its" in subsection (C) refers not to the insolvent insurer, but to the Fund. The context in which the phrase appears makes this clear. A.R.S. § 20–667(A) specifies the periods of time within which the Fund is "obligated" on covered claims. Subsection (B) limits the Fund's "obligation" to the lesser of the face amount of the insolvent insurer's policy or $100,000. It is thus evident that the language of subsection (C) merely places the Fund in the stead of the insurer to the extent that the Fund itself is statutorily obligated on the covered claim. As we have noted, A.R.S. § 20–673(C) specifically reduces the Fund's obligation on a covered claim by any amount the claimant recovers under other applicable insurance. A.R.S. § 20–667 is thus fully consistent with the trial court's interpretation of A.R.S. § 20–673(C).

■■■ We also reject appellant's argument that the trial court's interpretation of A.R.S. § 20–673(C) conflicts with that subsection's characterization of the insolvent insurer's policy as "excess coverage." We decline to give that phrase the all-inclusive meaning which appellant urges, because to do so would effectively make the last sentence of subsection (C) meaningless. We are required to construe the statute as a whole and give effect to all its provisions. *Gortarez v. Smitty's Super Valu, Inc.*, 140 Ariz. 97, 680 P.2d 807 (1984); *State v. Superior Court*, 113 Ariz. 248, 550 P.2d 626 (1976). Giving effect to all of its provisions, A.R.S. § 20–673(C) can be reasonably interpreted to operate in a manner similar to an excess-escape clause. Thus, under the first and second sentences of subsection (C), where another policy is applicable

the insolvent insurer's policy is statutorily "deemed to be excess coverage" and recovery under such other policy must be exhausted before turning to the "excess" coverage afforded by the insolvent insurer's policy.[3] However, once the coverage is determined to be excess, the limitation of the third sentence comes into play and allows the fund to entirely escape liability if the claimant has already recovered an amount from other applicable insurance which is equal to or in excess of the covered claim.[4] Subsection (C)'s reference to the insolvent insurer's policy as "excess" insurance is thus not inconsistent with the reduction required by the third sentence thereof.

Appellant's reliance on *McKinney v. Aldrich*, 123 Ariz. 488, 600 P.2d 1120 (App. 1979), is misplaced. *McKinney* voided that portion of A.R.S. § 20–673(D) which provided: "Such claimant shall have *no claim* against the insured of the insolvent carrier or the fund if the full amount of uninsured motorist coverage was not recovered by such claimant." (Emphasis added.) The court stated:

"Under various policies damages against uninsured motorists are determined by arbitration rather than litigation as an alternative to settlement. It follows that a statute extinguishing a claim against the insured of an insolvent insurer unless the injured claimant has first recovered the full amount of uninsured motorist coverage may effectively bar the courthouse door." 123 Ariz. at 490, 600 P.2d at 1122.

The court accordingly held that the quoted language violated Ariz. Const. art. XVIII, § 6. In contrast to subsection (D) of § 20–673, subsection (C) contains no language that purports to extinguish the underlying claim itself under any circumstances. Moreover, a reading of the opin-

---

3. Any policy provisions which may be contrary to this statutory provision are void. *Cf. State Farm Mutual Automobile Ins. Co. v. Fireman's Fund Ins. Co.*, 149 Ariz. 179, 717 P.2d 858 (1986) (provision in violation of A.R.S. § 20–1123.01 is void). Thus, the Ambassador policy coverage becomes excess, notwithstanding any policy provisions to the contrary.

4. If the insolvent insurer's policy in this case had provided coverage in the amount of $25,000, there would still have been excess coverage available to appellant after the reduction of the $15,000 recovered from other applicable insurance, and under *State Farm v. Fireman's Fund, supra* note 3, the apportionment provisions of the Ambassador policy would not be applicable.

ion in *McKinney* makes it clear that the court failed to mention the kind of "apportionment" or "set-off" applied by the trial court in this case simply because no such issue was before it. *McKinney* provides no support for appellant's position.

Cases such as *Transportation Ins. Co. v. Wade,* 106 Ariz. 269, 475 P.2d 253 (1970) and *Geyer v. Reserve Ins. Co.,* 8 Ariz.App. 464, 447 P.2d 556 (1968), do not support appellant's position. First, in the instant case the application of the challenged statutory provision does not render unavailable any statutorily mandated minimum coverage. More importantly, appellant is challenging a statutory provision rather than a clause in an insurance policy. This statute was adopted by the same legislature which enacted the Financial Responsibility Act, A.R.S. § 28–1101 *et seq.,* and thus has the same "public policy" underpinnings as the Financial Responsibility Act.

■ The latter point also undermines appellant's argument that the trial court's interpretation of A.R.S. § 20–673(C) contravenes public policy, the legislative intent involved in the establishment of mandatory liability insurance, and the intent involved in the establishment of the Fund. The best indication of legislatively enacted public policy and legislative intent is the language of the enactment itself. Thus, A.R.S. § 20–673(C) itself constitutes the expression of legislative policy and legislative intent, and as we have held *supra,* the trial court correctly interpreted it.[5]

■ Appellant also appears to argue that as applied by the trial court, A.R.S. § 20–673(C) abrogates her right to recover damages, thereby violating Ariz. Const. art. II, § 31 and art. XVIII, § 6. We cannot agree. Unlike subsection (D), subsection (C) does not purport to limit or abrogate a "claim" for damages. *See McKinney v. Aldrich, supra.* Instead, it merely

operates to reduce the amount potentially recoverable from the Fund by any amount actually collected under other applicable insurance. Appellant has cited no authority, and we are aware of none, supporting the proposition that such a result amounts to abrogating a right of action for damages or limiting the amount of damages recoverable from the alleged tortfeasor.

■ Appellant finally argues that A.R.S. § 20–673(C) violates her right to equal protection of the law by failing to afford her the same coverage available to other tort victims. She notes that in *Kenyon v. Hammer,* 142 Ariz. 69, 688 P.2d 961 (1984) our supreme court held that the right to bring a claim for damages for personal injuries is fundamental. She argues: "Thus, Appellant's equal protection argument is subject to *strict scrutiny.*" Presumably, the classes she posits as receiving unequal treatment are those with personal injury claims in excess of $15,000 covered by two minimum liability policies issued by solvent insurers, as compared with those whose claims are covered by a minimum liability policy issued by a solvent insurer and one issued by an insolvent insurer.

We cannot agree with appellant's equal protection analysis. Strict scrutiny is to be applied only in those cases where the statute in question imposes a burden on a suspect classification such as race or religion, or impinges on a "fundamental right." *Kenyon v. Hammer, supra.* As we noted previously, A.R.S. § 20–673(C) does not abrogate or limit the "claim" for damages or limit the amount of damages a claimant may recover from a tortfeasor. It merely operates to reduce the amount of the Fund's potential liability on a claim against an insolvent insurer by the amount the claimant has actually collected from other available insurance. There is no fun-

---

5. Appellant's reference to the heading of A.R.S. § 20–673 in an attempt to avoid the clear language of subsection (C) is unpersuasive. As stated in A.R.S. § 1–212, "headings to sections . . . are supplied for the purpose of convenient reference and do not constitute part of the law." This court in *Arizona Foundation for Neurology*

*& Psychiatry v. Sienerth,* 13 Ariz.App. 472, 477 P.2d 758 (1970), noted that if a statute is ambiguous, it might be appropriate to refer to the heading as a limited aid in resolving the ambiguity. Here, the questioned sentence is not ambiguous. Rather, appellant would apply the heading to create ambiguity.

damental right to receive statutory replacement coverage for 100% of a claim against an insolvent insurer. The statutory classification presumably at issue here must therefore be examined under the "rational basis" test. *Kenyon v. Hammer, supra.* Of that test, the *Kenyon* court stated:

"This analysis allows greatest leeway to the legislature; it upholds legislative regulation which imposes burdens on one class but not another so long as (1) the court can find some legitimate state interest to be served by the legislation and (2) the facts permit the court to conclude that the legislative classification rationally furthers the state's legitimate interest." (Citations omitted.) 142 Ariz. at 78, 688 P.2d at 970.

A.R.S. § 20–673(C) rationally furthers the state's legitimate interest in preserving the Fund's financial integrity while at the same time assuring recovery of at least the statutorily mandated minimum liability coverage.

■ Appellant additionally argues that she is being denied equal protection within the Fund's own statutory confines because collectible uninsured motorist coverage does not reduce the Fund's exposure under subsection (D), while collectible liability coverage reduces the Fund's exposure under subsection (C). Appellant's premise is invalid. It is true that *McKinney v. Aldrich, supra,* invalidated that portion of subsection (D) that purported to abrogate a claim against an insolvent carrier's insured if the claimant failed to recover the full amount of applicable uninsured motorist coverage. The *McKinney* decision, however, did not disturb the first sentence of subsection (D), which provides: "If damages against uninsured motorists are recoverable by the claimant from such claimant's own insurer, such recoverable damages shall be a credit against a covered claim payable pursuant to this article if the full amount of such uninsured motorist coverage has been exhausted." We read that language, together with *McKinney*, to provide that any amount collected under a claimant's own uninsured motorist coverage operates to reduce the amount of the covered claim against the insolvent insurer which the Fund would otherwise be required to pay. Accordingly, subsection (D) operates no differently than subsection (C), and no equal protection issue arises.

In summary, we uphold the trial court's interpretation of § 20–673(C), and find it unambiguous. We further note that appellant's contentions are generalized arguments which tend to ignore the actual language used in the questioned sentence. Appellant has not suggested any contrary interpretation which gives effect to the actual language used by the legislature.

The judgment entered by the trial court is affirmed.

SHELLEY, P.J., and KLEINSCHMIDT, J., concur.