823 P.2d 1304

Jesus **BETANCOURT** and Esther Betancourt, husband and wife, Plaintiffs–Appellees,

v.

**ARIZONA PROPERTY & CASUALTY INSURANCE FUND,** Defendant–Appellant.

No. 1 CA–CV 90–150.

Court of Appeals of Arizona, Division 1, Department A.

July 23, 1991.

Review Denied Feb. 19, 1992.*

* Feldman, C.J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

Roush, McCracken & Guerrero by Peter A. Guerrero, Manuel P. Guerrero, Phoenix, for plaintiffs-appellees.

Jones, Skelton & Hochuli by Larry J. Cohen, Phillip H. Stanfield, Phoenix, for defendant-appellant.

## OPINION

GERBER, Judge.

The primary issue in this appeal is whether the Arizona Property & Casualty Insurance Fund (the Fund) is bound by a settlement agreement reached between an insolvent insurer and a third party prior to the insurer's insolvency. Secondary issues concern the award of attorneys' fees.

## FACTS AND PROCEDURAL HISTORY

For purposes of appeal, the facts are undisputed. Appellee Esther Betancourt and Lori Ogles were involved in an automobile accident on May 6, 1986. At the time of the accident, Ogles was insured by American Excel Insurance Company, with liability limits of $15,000 per person. Betancourt filed a complaint against Ogles on May 8, 1987. On March 1, 1988, Betancourt entered into a settlement agreement with American Excel Insurance Company on Ogles' behalf for the policy limits of $15,000. American Excel issued a draft in that amount to Betancourt on March 14, 1988. At the time the settlement agreement was reached and the draft issued, American Excel was doing business as a casualty and property insurer in Arizona.

On May 8, 1988, the draft issued by American Excel was dishonored by the bank. Shortly afterwards, on May 31, 1988, American Excel was judged insolvent by an Iowa court. On June 24, 1988, Betancourt demanded that the Fund pay her $15,000 pursuant to the March 14, 1988 draft issued by American Excel. The Fund refused.

Betancourt subsequently filed the complaint in this action, seeking reimbursement of $15,000. Upon the parties' cross-motions for summary judgment, the trial court granted summary judgment in favor of Betancourt. Pursuant to her request, the trial court awarded Betancourt attorneys' fees of $4,125. In reply to the Fund's response to the motion for attorneys' fees and motion to set aside judgment and motion for reconsideration the trial court advised the parties that attorneys' fees were awarded pursuant to A.R.S. § 12–341.01, and further explained the basis for the award. The Fund filed a timely notice of appeal, raising the issues of the Fund's duties and the propriety of attorneys' fees.

## THE FUND'S DUTY

■ The Fund contends that its obligation is limited to the insolvent insurer's obligation under the policy. Although it acknowledges that it owes a duty to the insured to defend and indemnify, it maintains that this duty does not obligate it to settle. Any settlement agreement reached between a third party and an insolvent insurer, in its view, is beyond the insurer's duty to defend and indemnify. Because the Fund is liable to the same extent as the insolvent insurer under the policy, the Fund, in its view, is not obligated to honor a settlement agreement.

In support of this position, the Fund suggests that the legislature expects it to investigate all claims, under A.R.S. § 20–676, which provides for a stay in all proceedings in which the Fund becomes involved. This stay enables the Fund to have a separate and independent opportunity to evaluate and defend covered claims so that it pays only valid claims to the extent of their actual value. Therefore, in this view, the Fund should not be forced to assume that claims are valid but should instead have the right to independently evaluate the validity of each claim.

Betancourt, on the other hand, maintains that the settlement is an obligation of the

insurer under the policy. Specifically, she argues that the settlement cannot be ignored merely because the statute of limitations has expired, which deprives Betancourt of her claim, and that the insolvent insurer was contractually bound by the settlement agreement. *See Hays v. Fischer,* 161 Ariz. 159, 777 P.2d 222 (App.1989). She also contends that there is no authority for the Fund's position that the legislature expects it to investigate each claim. She relies on A.R.S. § 20–667(C), which gives the Fund all the rights, duties and obligations of the insolvent insurer. Therefore, in this view, because the insurer could not avoid the settlement, neither could the Fund. She concludes that the Fund does not have a right to independently evaluate a personal injury claim which became liquidated before the insurer's insolvency.

The Arizona Property & Casualty Insurance Guaranty Fund was created by statute to assume the liability of insolvent insurers. *Arizona Property & Casualty Insurance Guaranty Fund v. Herder,* 156 Ariz. 203, 751 P.2d 519 (1988); *Arizona Property & Casualty Insurance Guaranty Fund v. Helme,* 153 Ariz. 129, 735 P.2d 451 (1987). Once the Fund becomes involved because of an insurer's insolvency, it is "deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent." A.R.S. § 20–667(C); *see Helme,* 153 Ariz. at 132, 735 P.2d at 454. In *Herder,* the supreme court explained that "the legislative objective [of A.R.S. § 20–661 *et seq.*] was to make the Fund liable to the same extent that the insolvent insurer would have been liable under its policy." 156 Ariz. at 205, 751 P.2d at 521 (footnote omitted). The Fund is only obligated, however, for "covered claims." A.R.S. § 20–667(A). A covered claim is "an unpaid claim ... which arises out of and is within the coverage of an insurance policy to which this article applies issued by an insurer, if such insurer becomes an insolvent insurer...." A.R.S. § 20–661(3).

Despite the expansive language in A.R.S. § 20–667(C) that the Fund shall be "deemed the insurer" and shall assume all the insolvent insurer's rights, duties and obligations, the supreme court rejected the suggestion that the rights and obligations of an insolvent insurer and the Fund are "absolutely coextensive." *Herder,* 156 Ariz. at 205 n. 3, 751 P.2d at 521 n. 3. The court explained:

> In two critical areas, A.R.S. § 20–667 limits the Fund's obligations without regard to what the insolvent insurer's obligations may have been. Subsection (A) limits the period during which claims must arise to be covered. Subsection (B) limits the Fund's obligation to the face amount of the insolvent insurer's policy or $100,000, whichever is less. Herder's construction of § 20–667(C) would also render inoperable other provisions of the statutory scheme defining the Fund's rights. *See, e.g.,* A.R.S. § 20–676 (allowing the Fund to obtain a stay in any proceedings pending against the insolvent insurer and to set aside a judgment upon which a covered claim is based). Thus we conclude, as the *Ueki* [*Arizona Property and Casualty Ins. Guaranty Fund v. Ueki,* 150 Ariz. 451, 724 P.2d 70 (App.1986)] court did, that the Fund is deemed the insurer to the extent of the Fund's obligation on the covered claims, and not to the extent of the insolvent insurer's. 150 Ariz. at 455, 724 P.2d at 74.

*Id.*

█ Whether the Fund is obligated to pay the settlement depends upon whether it is statutorily obligated to do so, and specifically whether any of the statutory exclusions in *Herder* are applicable. The first question must be whether Betancourt's claim is a "covered claim." As noted above, a covered claim is an unpaid claim arising out of and within the coverage of an insurance policy. Here, the settlement agreement with Betancourt arose out of the policy's coverage to protect and indemnify its insured from claims. Depending on the circumstances of each case, an insurer may have an obligation under its policy to protect its insured by settling a third party's claim. *See, e.g., City of Glendale v.*

*Farmers Ins. Exchange,* 126 Ariz. 118, 613 P.2d 278 (1980) (insured can bring bad faith claim against insurer which refuses to settle in good faith); *Farmers Ins. Exchange v. Henderson,* 82 Ariz. 335, 313 P.2d 404 (1957) (in deciding whether to settle, insurer must protect insured's interest). A claim made under a settlement agreement would therefore be a covered claim, for which the Fund would become liable upon the insurer's insolvency. Accordingly, the Fund is obligated to pay the amount of the settlement, as long as it is the lesser amount of the policy limits or $100,000. *See* A.R.S. § 20–667(B).

■ The Fund argues that the legislature expects it to investigate all claims, and to that end, has provided for a stay in all proceedings in which the Fund becomes involved. *See* A.R.S. § 20–676 which provides:

> *All proceedings in which the insolvent insurer or the insolvent insurer's insured is a party in any court of this state shall be stayed* for up to six months and such additional time as may be determined by the court from the date the insolvency is determined or an ancillary proceeding is instituted in this state, whichever is later, *to permit proper defense by the fund of all pending causes of action as to any covered claims arising from a judgment under any decision, verdict or finding based on the default of the insolvent insurer or its failure to defend an insured.* The fund either on its own behalf or on behalf of such insured may apply to have such judgment, order, decision, verdict or finding set aside and shall be permitted to defend such claim on the merits.

(Emphasis added.) The statute appears to limit the Fund's right to seek a stay to proceedings which have resulted in a default judgment or verdict or finding based upon the insolvent insurer's failure to defend. In addition to seeking a stay, the Fund can apply to have the judgment, order, decision, verdict or finding set aside so that it can defend the claim on the merits. In this case, however, the proceedings between Betancourt and the insured were dismissed because a settlement had been reached. There was no default judgment, verdict or finding resulting from American Excel's failure to defend. A.R.S. § 20–676, therefore, does not apply.

Even if a stay were appropriate, the Fund did not seek one. Instead, it allowed the case to be dismissed based upon American Excel's settlement with Betancourt. The Fund suggests that Betancourt could have avoided the dismissal or moved to set aside the judgment in light of American Excel's insolvency. However, A.R.S. § 20–676 places this burden on the Fund. The Fund's failure to set aside the judgment based upon the settlement of Betancourt's claim resulted in the finality of the judgment of dismissal and settlement.

After entering into the settlement agreement, American Excel was contractually bound by that agreement. That obligation arose out of American Excel's policy obligating it to protect and indemnify its insured. The settlement was within the policy limits of $15,000. Pursuant to A.R.S. § 20–667(C), the Fund is "deemed" the insurer to the extent of the Fund's statutory obligation. None of the statutory limitations discussed in *Herder* apply. Because American Excel would be obligated to remit the $15,000 pursuant to the settlement agreement, and Betancourt's claim is a covered claim within the meaning of § 20–661(3), the Fund is statutorily obligated to pay. The summary judgment is therefore affirmed.

## ATTORNEYS' FEES

■ The trial court awarded $4,125 in attorneys' fees to Betancourt pursuant to A.R.S. § 12–341.01. That statute allows attorneys' fees to be awarded, in the trial court's discretion, in an action arising from a contract. Upon the Fund's motion for reconsideration of the judgment and award of attorneys' fees, the trial court expressly stated that it did not believe that the "issue of the uniqueness of the legal question involved was such that plaintiff or his counsel should have to absorb this extra cost in enforcing the settlement agreement previously entered into." The court further ex-

plained that the *Herder* case was a "clear indication that defendant's [the Fund's] position would probably not be upheld." It concluded that the Fund should be responsible for attorneys' fees.

The Fund, however, argues that this issue is so novel that it should not be penalized for pursuing it. It maintains that this award of attorneys' fees will discourage other parties from litigating novel questions. It also claims that *Herder* did not resolve the issue in this case.

Although we agree that *Herder* did not resolve the issues in this case, we nevertheless cannot find that the trial court abused its discretion in awarding attorneys' fees. The award is therefore affirmed.

■ The Fund alternatively maintains that the affidavit in support of Betancourt's motion for attorneys' fees was inadequate under *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 673 P.2d 927 (App.1983). Betancourt responds that *Schweiger* does not apply to contingent fee cases such as this. The Fund then cites *Crews v. Collins*, 140 Ariz. 80, 680 P.2d 216 (App.1984), a Division Two case, which held that in a contingent fee case, evidence of the reasonableness of the requested fee is required. 140 Ariz. at 82, 680 P.2d at 218. From this, the Fund concludes that because Betancourt's attorneys offered "absolutely no support for its request of attorneys' fees," the case must be remanded to the trial court for an evidentiary hearing on the reasonableness of the amount of attorneys' fees requested.

In support of Betancourt's motion for attorneys' fees, attorney Manuel P. Guerrero submitted an affidavit stating that his law firm had a one-third contingent fee arrangement with Betancourt, that 27.5 hours were expended in handling the action, and that its usual and customary fee for similar services rendered was $150 per hour. It maintained this was a reasonable fee for the services rendered.

As noted above, the trial court subsequently awarded Betancourt attorneys' fees of $4,125 (27.5 × $150). The court agreed that the affidavit in support of the motion for attorneys' fees "could contain more information as indicated in *Schweiger v. China Doll Restaurant, Inc.*", but nevertheless stated that a review of the file indicated that 27.5 hours was "reasonably based and well supported by the work and the file." The court also pointed out that the requested fee was below the amount that would have been paid pursuant to the contingent fee arrangement. The court concluded:

> Considering the effort necessarily made since defendant refused to abide the previously entered settlements of the original insurance company, the Court finds the record here clearly provides support for the Court's finding that the request for $4,125.00 in attorneys' fees is very reasonable.

This case differs from *Crews* because counsel provided an affidavit setting forth the number of hours expended in the action, as well as the usual fee per hour. Thus, there *was* evidence of the reasonableness of the fee requested. While *China Doll* ordinarily requires more explicit attorney compliance, the trial court's explicit findings satisfy those demands in this unique case, and we find no abuse of the trial court's fee decision for this reason. We conclude that the affidavit was sufficient to support the award of attorneys' fees in this case.

## ATTORNEYS' FEES ON APPEAL

Betancourt also requests attorneys' fees on appeal pursuant to A.R.S. § 12–341.-01(A) and Rule 21(c), Arizona Rules of Civil Appellate Procedure. In our discretion, and for the same reasons attorneys' fees were awarded by the trial court, this request is granted, upon Betancourt's compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

The trial court is affirmed in all respects.

FIDEL, C.J., and JACOBSON, P.J., concur.