Keith **HAWKINS**, Appellant,

v.

**KENTUCKY INSURANCE GUARANTY ASSOCIATION, Appellee.**

No. 91–CA–164–MR.

Court of Appeals of Kentucky.

May 8, 1992.

Discretionary Review Denied by Supreme Court Nov. 11, 1992.

Bernard S. Ritchie, Louisville, for appellant.

William P. Swain, Louisville, for appellee.

Before EMBERTON, JOHNSON and WILHOIT, JJ.

WILHOIT, Judge.

This appeal is from a summary judgment which held that the appellee, Kentucky Insurance Guaranty Association (KIGA), was not liable to the appellant, Keith Hawkins. Mr. Hawkins was injured in an accident in May 1987 when he was a passenger on a motorcycle driven by Charles Mattingly. Hawkins was insured by Colonial Insurance Company of California with a policy providing uninsured and underinsured motorists coverages of $25,000 each. Mr. Mattingly was insured by a liability policy issued by American Interinsurance Exchange (AIE) with bodily injury limits of $25,000 per person. AIE was declared insolvent in August 1988. Hawkins subsequently initiated litigation against Mattingly and Colonial Insurance Company. Hawkins settled with Colonial for $25,000 under the uninsured motorists provision. The KIGA, which stepped into the shoes of AIE upon its insolvency, initiated a declaration of rights action seeking a judgment declaring it had no duty to defend Mattingly and that it owed no sums to Hawkins. Hawkins filed a petition for counter-declaration of rights seeking $25,000 from the KIGA. The circuit court held that the KIGA was relieved from any further liability arising from the motorcycle accident. This appeal by Hawkins followed. There is no issue on appeal concerning the KIGA's duty to defend Mattingly because he did not appeal the circuit court judgment.

The KIGA's maximum liability to Hawkins is $25,000, the limits of the AIE policy. See KRS 304.36–080(1)(b). The KIGA argues, and the circuit court agreed, that it is entitled to offset against its exposure the amount Hawkins recovered under the uninsured motorists provision of his policy. Hawkins contends that taking into consideration the purpose of the legislation creating the KIGA, stated in KRS 304.36–020 as including the avoidance of "financial loss to claimants or policy holders because of the insolvency of an insurer," the KIGA should not be allowed this deduction. Hawkins claims that his damages are at least $50,-000, and that had AIE not become insolvent, he would have collected $25,000 from AIE and then $25,000 from his underinsured motorists coverage. He asserts that the term "such recovery" in KRS 304.36–120(1) refers to sums which would lead to a duplication of benefits, and that permitting the KIGA the offset causes him to sustain a loss of $25,000.

KRS 304.36–120(1) provides as follows:

Any person having a claim against his insurer under any provision in his insurance policy which is also a covered claim shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this subtitle shall be reduced by the amount of such recovery under the claimant's insurance policy.

This statute directs a person having a "covered claim," such as Hawkins, to look first to his insurer before seeking recovery from the KIGA. See Kentucky Ins. Guaranty Ass'n v. State Farm Mutual Ins. Co., Ky. App., 689 S.W.2d 32, 35 (1985). KRS 304.-36–050(3) defines "covered claim" as an "unpaid claim ... which arises out of and is within the coverage" of an insolvent insurer's policy. Hawkins looked to his insurer under the uninsured motorists provision of the policy after AIE became insolvent, and the release he executed clearly denominated the $25,000 was from his uninsured motorists coverage.

While Hawkins's argument is not totally without merit, we believe that KRS 304.36–120 evinces a legislative intent that the KIGA's liability shall be reduced by any amount recovered from a claimant's own insurer by reason of the same insured event for which the KIGA claim is made. The circuit court properly allowed as a credit against the KIGA's liability the amount Hawkins received under his uninsured motorists coverage.

The Kentucky Insurance Guaranty Association Act is based on the National Association of Insurance Commissioners Post–Assessment Property and Liability Insurance Guaranty Act, and many jurisdictions have adopted this act. A review of cases interpreting a statute similar to KRS 304.36–120 comports with the result reached in this case. An argument similar to Hawkins's was made, and rejected, in *Stecher v. Iowa Insurance Guaranty Ass'n*, 465 N.W.2d 887 (Ia.1991). *See also Arizona Property and Casualty Ins. Guar. Fund v. Ueki*, 150 Ariz. 451, 724 P.2d 70 (Ariz.App.1986); *Vokey v. Massachusetts Insurers Insolvency Fund*, 381 Mass. 386, 409 N.E.2d 783 (1980); *compare Wondra v. American Family Ins. Group*, 432 N.W.2d 455 (Minn. App.1988), *overruled on other grounds, Garrick v. Northland Ins. Co.*, 469 N.W.2d 709 (Minn.1991). The court in *Wondra* held that the injured party can elect to recover under his underinsured motorists clause with no offset against the guaranty fund's liability; however, the court recognized that nonduplication and exhaustion requirements apply to a recovery under uninsured motorists provision. 432 N.W.2d at 460. The Louisiana Supreme Court held in *Billeaudeau v. Lemoine*, 386 So.2d 1359, 1361 (La.1980) that an injured party's uninsured motorists benefits were not to be used as an offset against the guaranty fund's liability; however, this case was legislatively overruled in 1990. *See* LA R.S. 22:1386 (West 1991). We are aware that allowing the KIGA to offset the amount recovered under the uninsured motorists provision deprives Hawkins of the underinsured motorists coverage, *see* Note, *Insurance Company Insolvencies and Insurance Guaranty Funds: A Look at the Nonduplication of Recovery Clause*, 74 Iowa L.Rev. 927 (1989); however, this result is compelled by the statutory scheme.

The circuit court judgment is affirmed.

All concur.