88 P.3d 182

Elizabeth A. JANGULA, a single woman, Plaintiff–Appellant,

v.

**ARIZONA PROPERTY AND CASUALTY INSURANCE GUARANTY FUND,** Defendants–Appellees.

No. 1 CA–CV 03–0290.

Court of Appeals of Arizona, Division 1, Department D.

April 22, 2004.

Warnock, MacKinlay & Associates, P.L.L.C., by Brian R. Warnock, James N. MacKinlay, Phoenix, Attorneys for Plaintiff–Appellant.

Glover & Van Cott, P.A., by Ryan J. Talamante, Philip N. Brown, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

GEMMILL, Judge.

¶ 1 In 1988 the Arizona Supreme Court interpreted Arizona Revised Statutes ("A.R.S.") section 20–673(C) in *Arizona Property & Casualty Insurance Guaranty Fund v. Herder*, 156 Ariz. 203, 751 P.2d 519 (1988). A decade later the Arizona legislature amended § 20–673(C) (2002) to add this sentence: "Any recovery pursuant to this article shall be reduced by the amount of the recovery under the claimant's insurance policy." To resolve this appeal, we must decide if this new sentence changed the meaning of § 20–673(C).

¶ 2 The issue is whether § 20–673(C), as amended, requires that the amount recoverable from the Arizona Property and Casualty Insurance Guaranty Fund ("Fund") be reduced by the amount Elizabeth A. Jangula ("Jangula") has recovered under her own insurance coverage.

## FACTS AND PROCEDURAL HISTORY

¶ 3 Jangula appeals the trial court's summary judgment in favor of the Fund in this declaratory judgment action. The trial court concluded that § 20–673(C) requires that Jangula's recovery from the Fund be reduced by the amount she recovered from her own underinsured motorist ("UIM") coverage. Because we agree with the trial court, we affirm the judgment in favor of the Fund.

¶ 4 The facts are undisputed. Jangula was a passenger in an automobile driven by Angela Jangula ("Angela"), and was injured due to Angela's negligence. Angela was insured by Reliance Insurance Company ("Reliance") under a policy providing $100,000 in bodily injury liability coverage. After Jangula sued Angela, Reliance was declared insolvent, and the Fund assumed Reliance's obligations in accordance with A.R.S. §§ 20–661 to –680 (2002).

¶ 5 Under A.R.S. § 20–667(B) (2002), the Fund is obligated to pay Jangula's damages up to the applicable limits of the insolvent insurer's policy or $99,900, whichever is less. Additionally, § 20–673(C) requires claimants to "exhaust all rights under other applicable coverage[s]" before seeking recovery from the Fund and provides—since 1998—that any "recovery pursuant to this article shall be reduced by the amount of the recovery under the claimant's insurance policy."

¶ 6 The Fund and Jangula stipulated that her damages exceeded $115,000. Jangula had recovered $15,000 in UIM benefits under her own insurance policy. She sought a declaratory judgment that she was entitled to receive $99,900 from the Fund. The Fund contended that under § 20–673(C), the $99,900 otherwise available from the Fund must be reduced by the $15,000 that Jangula recovered under her policy, leaving the Fund liable for only $84,900, which it paid to her.

On cross-motions for summary judgment regarding the amount for which the Fund is liable, the trial court found in favor of the Fund. Judgment was entered, Jangula appeals, and we have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## BACKGROUND REGARDING
## SECTION 20–673(C)

¶ 7 The resolution of this case depends on the meaning of § 20–673(C) after the 1998 amendment. That subsection, with the sentence added in 1998 italicized, provides:

> Where more than one policy may be applicable, a policy issued by the insolvent insurer shall be deemed to be excess coverage. The claimant shall be required to exhaust all rights under other applicable coverage or coverages. *Any recovery pursuant to this article shall be reduced by the amount of the recovery under the claimant's insurance policy.* Any amount payable on a covered claim shall be reduced by the amount of such recovery under other applicable insurance.

A.R.S. § 20–673(C) (emphasis added).

¶ 8 In 1986 this court held that the last sentence of subsection (C) required that the amount to be paid by the Fund must be reduced by the amount paid by any other applicable insurance policy. *See Arizona Prop. & Cas. Ins. Guar. Fund v. Ueki,* 150 Ariz. 451, 724 P.2d 70 (App.1986). We concluded that the "amount payable on a covered claim" referred to the limits of the Fund's statutory liability for the claim, so that a reduction in that amount would reduce the amount the Fund was required to pay. *Id.* at 454–55, 724 P.2d at 73–74. For example, given an injured claimant with UIM coverage of $15,000, a negligent driver insured by an insolvent insurer with policy limits of $100,000, and a damage claim of $150,000, the Fund would be liable only for its statutory obligation of $99,900 minus the $15,000 paid by the UIM carrier.

¶ 9 In 1988 our supreme court expressly disapproved *Ueki,* holding that the last sentence of subsection (C) required only that the amount of the claimant's total damage claim be reduced by the amount paid under other

insurance policies, but that the other payments would not be offset against the Fund's obligation. *Herder,* 156 Ariz. at 207–09, 751 P.2d at 523–25. The court concluded that the phrase "amount payable on a covered claim" referred to "the total amount payable as damages for the claimant's injuries caused by the covered occurrence," not to the extent of the Fund's obligation. *Id.* at 207, 751 P.2d at 523. A reduction in the "amount payable on a covered claim" would reduce the total amount of the damage claim, but if the total damages still exceeded the Fund's maximum obligation (the lesser of $99,900 or the limits of the insolvent insurer's policy), the amount paid by the Fund would not be reduced. Thus, in the example given above, with a damage claim of $150,000, an insolvent insurer's policy limits of $100,000, and UIM coverage paid in the amount of $15,000, the damage claim would be reduced to $135,000, and the Fund would be required to pay $99,900, the full extent of its statutory obligation.

¶ 10 In 1997 the supreme court reiterated its interpretation that the offset required by § 20–673(C) applied to the claimant's total damage claim rather than the amount recoverable from the Fund. *A.H. v. Arizona Prop. & Cas. Ins. Guar. Fund,* 190 Ariz. 526, 531, 950 P.2d 1147, 1152 (1997).

¶ 11 In 1998 the legislature amended the statute, adding that "[a]ny recovery pursuant to this article shall be reduced by the amount of the recovery under the claimant's insurance policy." 1998 Ariz. Sess. Laws, ch. 94, § 5. We agree with the trial court that this amendment changes the interpretation announced in *Herder.*

## DISCUSSION

¶ 12 Our review of the interpretation of a statute is *de novo. See Great Am. Mortgage v. Statewide Ins. Co.,* 189 Ariz. 123, 125, 938 P.2d 1124, 1126 (App.1997). Our goal in interpreting statutes is to determine and apply the legislature's intent. *State v. Korzep,* 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990). "We look first to the plain language of the statute as the most reliable indicator of its meaning." *State v. Mitchell,* 204 Ariz. 216, 218, ¶ 12, 62 P.3d 616, 618 (App.2003).

■ ¶ 13 We begin, therefore, by considering the language of the new sentence in A.R.S. § 20–673(C): "Any recovery pursuant to this article shall be reduced by the amount of the recovery under the claimant's insurance policy." The word "recovery" in this context customarily means the amount of money received by a claimant after asserting a claim or pursuing an action for damages. *See* BLACK'S LAW DICTIONARY 1280 (7th ed.1999) (defining "recovery" as an "amount awarded in or collected from a judgment or decree"). The referenced "article" is Article 6 of Chapter 3 of Title 20 of the Arizona Revised Statutes. Article 6 establishes the Fund and defines its obligations. *See* A.R.S. §§ 20–661 to –680. A "recovery pursuant to this article" is defined as the smallest of (1) the claimant's damages, (2) the face amount of the policy issued by the insolvent insurer, or (3) $99,900. *See* A.R.S. §§ 20–661(3) (defining covered claim) and 20–667(B) (limiting coverage to lesser amount of covered claim, face amount of policy, or $99,900).

¶ 14 Applying the plain and ordinary meaning of the 1998 amendment to § 20–673(C) to this dispute, Jangula's allowable recovery from the Fund must be reduced by any amount she has recovered from her own coverage. Because her total recoverable damages exceeded $115,000, she would be entitled to recover $99,900 from the Fund if there was no other coverage available. But because she has recovered UIM benefits of $15,000 from her own policy, her recovery from the Fund must be reduced by $15,000. The Fund is obligated, therefore, to pay her $84,900, and has done so.

¶ 15 Prior to the 1998 amendment, the supreme court in *Herder* held that the phrase "amount payable on a covered claim" in the last sentence of § 20–673(C) referred to "the total amount payable as damages for the claimant's injuries caused by the covered occurrence," not to the extent of the Fund's obligation. 156 Ariz. at 207, 751 P.2d at 523. The legislature has now added the requirement that "any recovery" by the claimant under the article creating the Fund and defining its obligations "shall be reduced" by any amount the claimant recovers from her insurance policy.

■ ¶ 16 Our conclusion that the 1998 amendment has changed the meaning of § 20–673(C) is strongly supported, if not mandated, by the interpretive principle that when the legislature has amended a statute, "we must presume they intended to change existing law rather than perform a futile act." *Rotter v. Coconino County,* 169 Ariz. 269, 274, 818 P.2d 704, 709 (1991) (quoting *Lake Havasu City v. Mohave County,* 138 Ariz. 552, 558, 675 P.2d 1371, 1377 (App.1983)).

¶ 17 Jangula urges us to interpret § 20–673(C) to mean the same thing it meant after *Herder* but before the 1998 amendment. To adopt Jangula's interpretation would render the amendment meaningless and ineffectual. We decline to conclude that the legislature performed a futile or meaningless act when it added the additional sentence in 1998.

¶ 18 Jangula, citing *Herder,* asserts that the fact the legislature did not use "limit" or "limits" in the offset provision militates against the construction we are adopting. The court in *Herder,* however, did not state that the legislature was required to specifically reference the Fund's "limit" or "limits" if it wished to enact a reduction in the amount payable by the Fund under these circumstances. The court observed merely that because the legislature had not used terms commonly utilized in the insurance industry, it was less likely that a reduction in the Fund's obligation was intended under that version of the statute. *See Herder,* 156 Ariz. at 205, 751 P.2d at 521. Here, although the legislature did not adopt standard industry language and did not use "limit" or "limits" in the sentence added in 1998, it used terms sufficiently clear to indicate its intent that the amount recovered under the claimant's insurance policy must be offset against the amount otherwise recoverable from the Fund.

¶ 19 Jangula further contends that nothing in the legislative history supports our interpretation of the amendment. We agree that the 1998 legislation was primarily directed at amending the Arizona Life and Disability Insurance Guaranty Fund. *See* 1998 Ariz. Sess. Laws, ch. 94, § 14. But the fact remains that the legislature also amended portions of Article 6 pertaining to the Arizona

472

Property and Casualty Guaranty Fund, and as already noted, we must presume that the legislature intended to change the law with these amendments. *See supra* ¶¶ 16–17.

¶ 20 Another argument presented by Jangula is that the legislature did not intend to "overrule" *Herder* because it did not act quickly to do so and because it did not state its intent to overrule *Herder*. There is no requirement, however, that the legislature act promptly to "overrule" a supreme court decision. Moreover, the supreme court reiterated its holding from *Herder* in its 1997 *A.H.* decision, *see* 190 Ariz. at 531, 950 P.2d at 1152, just a few months before the enactment of the 1998 amendment to § 20–673(C). Nor is there any requirement that the legislature must, to change the law declared in a supreme court decision, specifically cite the decision and state its intention to change the law.

¶ 21 Finally, we also reject Jangula's assertion that this interpretation of the amendment contravenes public policy. The legislature created the Fund and may amend the statutes that define its obligations. The existence of the Fund assures a person in Jangula's position of $99,900 of coverage. If she recovers $15,000 from her own UIM insurer, as a result of the 1998 amendment to § 20–673(C) she then receives $84,900 from the Fund, resulting in a total recovery of $99,900. If the fund did not exist, she would likely recover only the $15,000 from her own policy, because of the insolvency of the negligent driver's insurer. We are not aware of any statute or public policy that requires the State to provide substitute liability coverage on a dollar-for-dollar basis for an insolvent insurer. The Fund exists to mitigate the adverse effects caused by the insolvency of insurers, not to fully replace the coverage that would have existed if those insurers were solvent. *See A.H.*, 190 Ariz. at 530, 950 P.2d at 1151 (commenting that the "rights and obligations of an insolvent insurer and the Fund are not absolutely coextensive" because the Fund's obligations "are limited by the statute").

## CONCLUSION

¶ 22 The trial court correctly applied A.R.S. § 20–673(C) to determine that the Fund's obligation under these circumstances was $84,900 rather than $99,900. We therefore affirm the judgment in favor of the Fund.

CONCURRING: JON W. THOMPSON, Presiding Judge, LAWRENCE F. WINTHROP, Judge.