JiWILLIAM A. CULPEPPER, Judge Pro Tem.
This is a suit for damages arising out of an automobile accident. Because we agree with the findings and ruling of the trial court we adopt its reasons as our own and affirm.

OPINION OF THE COURT

“Plaintiffs filed this suit on May 3, 1991 seeking damages arising out of an automobile accident which occurred on July 20, 1990. Named as defendants were Larry T. Haskins (Haskins), his insurer, Old Hickory Insurance Company (Old Hickory) and New Hampshire Insurance Company (New Hampshire) as the uninsured motorist insurer on plaintiffs’ vehicle. On October 8, 1991, settlement agreements were reached between all plaintiffs and the defendants, Haskins and Old Hickory. These settlements were within the policy limits of Old Hickory. On October 31,1991, Old Hickory was declared insolvent. The settlements were never funded. On January 31, 1992, plaintiffs amended their petition to name Louisiana Insurance Guaranty Association (LIGA) a defendant as the statutory successor of Old Hickory.
|2The parties have stipulated judgments in favor of plaintiffs for the amounts of their respective settlements with Old Hickory. The only question for determination by the court is the liability for these judgments between New Hampshire and LIGA.
LIGA argues that an as yet unpublished opinion of the Louisiana 1st Circuit Court of Appeal is directly on point and controlling in this case. See Kade R. Hebert v. Kelly A. Liner, et al., 92 C.A. 0047 (La.App. 3rd[1] Cir.1993).[1]
The facts of that ease are hardly distinguishable from those of the instant case. The accident complained of in Herbert occurred on October 7,1988. A settlement was reached between plaintiff, the defendant and his insurer in June of 1990. By act effective September 1990, the Legislature amended La.R.S. 22:1386 to include uninsured motorist insurance as those types of insurance which a claimant must exhaust prior to asserting a claim against LIGA. In December 1990, pri- or to payment of the settlement, the defendant insurer was declared insolvent.
Without considering what effect, if any, the settlement between plaintiff and the insolvent defendant insurer would have on LIGA the court merely reasoned that plaintiff had no vested right against LIGA until the defendant insurer was declared insolvent. When this occurred in December of 1990, the September 1990 amendment to Section 1386 was in effect, and accordingly, plaintiff was required to exhaust its claim against all other insurers, including its own uninsured motor *577 ist carrier, before proceeding against LIGA. Summary Judgment to this effect was rendered in favor of LIGA.
I sPlaintiff and New Hampshire, on the other hand, argue that this case is governed by the recent decision in Lastie v. Warden, 611 So.2d 721 (La.App. 4th Cir.1992). In that case, the 4th Circuit Court of Appeal upheld a settlement entered into between the plaintiffs and their own uninsured motorist insurer where the settlement had been reached prior to the insolvency of the insurer but never funded. In that case, LIGA, as the statutory successor, brought a Motion for Summary Judgment on the grounds that the vehicle in which the plaintiffs were injured was not covered under the policy on which the settlement was made. By counter action, plaintiffs brought their own Motion for Summary Judgment based on the settlement. The court concluded that LIGA was obligated under law to comply with the settlement entered between the plaintiffs and their now insolvent uninsured motorist carrier. In holding that the settlement had the effect of law between the parties, that court reviewed the laws creating the Louisiana Insurance Guaranty Association and the effect given compromise settlements in our law. Pertinent portions of that decision axe set forth below, to-wit:
“LIGA was created to ' “to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer ...” LSA-R.S. 22:1376. The Louisiana Supreme Court has held that, to effect this purpose, the provisions of the LIGA statute ‘ “must be interpreted to protect claimants and policyholders and to advance their interests rather than the interests of the association.” ’ Senac v. Sandefer, 418 So.2d 543, 546 (La.1982).
“The section of the law which delineates the powers and duties of LIGA states that LIGA shall:
|4Be deemed the insurer to the extent of its obligations on the covered claims and to such extent shall have all the rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent.
“R.S. 22:1382(A)(2). Thus, under this statute, LIGA ‘ “substitutes for the insolvent insurer.” ’ Weaver v. Kitchens, 556 So.2d 120, 122 (La.App. 5th Cir.1990), writ denied 573 So.2d 1124 [1123] (La.1991)”
On the effects of the compromise, the Court stated as follows:
“Compromise agreements between parties to avoid litigation are favored by law. Courts will not declare a settlement void without a clear showing that it violated good morals or public interest. Adams v. Adams, 529 So2d 877, 879 (La.App. 4th Cir.1988) writ denied, 533 So2d 363 (La.1988). A compromise has a force equal to the authority of things adjudged and is res judicata. La.Civ. Code art. 3078; Ditch v. Finkelstein, 399 So2d 1216, 1220 (La.App. 1st Cir.1981).”
and
“The application of res judicata does not require that the parties be actually the same physical parties, but only that they be the same parties in the legal sense of the word. Therefore, the requirement of identity of parties is satisfied where a successor of one of the parties is involved Succession of Cahn, 545 So2d 1158, 1159 (La.App. 4th Cir.1989).
“Moreover, LIGA is barred by the res judicata effect of the compromise from raising an issue as to coverage under the policy. Once confected, a compromise ‘ “causes the merger of the antecedent obligation or claim upon which it is based with itself, leaving the antecedent obligation with no separate or distinct existence.” ’ Sail [Sailing] Wiping Cloth v. Sewell, Inc., 419 So2d 112, 117 (La.App. 2d Cir.1982) We therefore find that the trial court erred in granting LIGA’s motion for summary judgment dismissing plaintiffs case.”
IsLIGA argues that the decision in Lastie is distinguishable in that there was no other insurance against which the plaintiffs in that ease could proceed and, accordingly, the issue of proceeding against other insurance as required by La.R.S. 1386 was not even con *578 sidered by the court. On the other hand, the court notes that the opinion of the trial court in Hebert, which was adopted in toto as the opinion of the 1st Circuit Court of Appeal, was rendered on August 21, 1990, considerably prior to the December 15, 1992 decision in hastie. In Hebert the arguments of the parties and the opinion of the court were directed toward whether the date of the accident (which pre-dated the amendment), or the date of insolvency of the insurance company (which was after the effective date of the amendment) determined the applicability of the amendment. There is nothing in Hebert to reflect a consideration of the res judicata effect a prior settlement between a plaintiff and a subsequently declared insolvent insurer would have on LIGA as the successor of the insolvent company. This issue was squarely met by the court in hast-ie.
A review of the statutes creating the Louisiana Insurance Guaranty Association and the numerous amendments thereto indicate a conscious effort on the part of the Legislature to limit LIGA’s liability to only those cases were there is no other insurance against which the plaintiff can recover its damages. Considering the vast number of insurers who have gone insolvent in the last few years and the tremendous strain this has placed on LIGA’s resources, this concern of the Legislature is certainly laudable and should be affirmed by the courts whenever possible. However, this concern should not be at the expense of the substantive law of our State nor contrary to the express purposes of the statute, one of which is to “avoid excessive delay in payment” to parties who have legitimate claims.
I sin this case, when Old Hickory became insolvent plaintiffs’ claim against Old Hickory had been reduced to a compromise settlement, which, under our law, “has a force equal to the authority of things adjudged and is res judicata”, and ... “Once confected, a compromise caused the merger of the antecedent obligation or claim upon which it is based with itself, leaving the antecedent obligation with no separate or distinct existence.” Lastie v. Warden (supra) If plaintiffs had attempted to repudiate the settlement and seek greater damages against LIGA after the insolvency of Old Hickory, their cause would have been defeated through an Exception of Res Judicata. While it is true, as LIGA argues, that plaintiffs did not have a vested right against LIGA at the time the settlement was reached, they did have a vested right in the execution of the settlement. Plaintiffs claim for damages merged into the compromise, “leaving the antecedent obligation with no separate or distinct existence”.
Sail [Sailing] Wiping v. Sewell, Inc., (supra). On the insolvency of Old Hickory, LIGA assumed all of the rights, duties and obligations of Old Hickory. Plaintiffs’ claims against LIGA is not for damages arising out of the accident, but for enforcement of their settlements.
On the other hand, New Hampshire was not a party to the settlement and, of course, is in no way legally obligated to pay that which Old Hickory obligated itself for in the settlement. A suit to enforce the settlement against New Hampshire would not state a cause of action. One of the express purposes of the statute creating LIGA, i.e., “to avoid excessive delay in payment” would be defeated if plaintiffs were forced to litigate and prove their claims of liability and damages against their U.M. carrier after having already effectively settled these claims against the primary insurer.
17LIGA further argues that under the statute it is only obligated to pay “covered claims” as defined by La.R.S. 22:1379 and that under sub-paragraph (3)(d) any claim based on or arising from a pre-insolvency obligation of an insolvent insurer is specifically excluded as a covered claim. A review of the examples set forth in that provision would not include a settlement of the principal demand as the type of pre-insolvency obligation intended to be excluded from “covered claims”. Listed as examples are, “attorney’s fees and expenses, statutory penalties and attorney’s fees, court costs, interest and bond premiums, and any other expenses incurred prior to the determination of insolvency”. The fact that LIGA is given the authority to “review settlements, releases and judgments” and to have same annulled *579 upon a showing of fraud, ill practices or where clearly excessive, indicates an intent on the part of the Legislature to have LIGA bound by such settlements, releases or consent judgments where they are not induced by fraud or ill practices, or are not clearly excessive. La.R.S. 22:1382(A)(4). (By stipulation all parties have agreed that the settlements are not subject to these defenses.)
Having concluded that LIGA is bound by the settlement, the next issue is whether LIGA is entitled to subrogation or indemnity against New Hampshire. First, it should be noted that based on the pleadings and stipulations of record, the court is of the opinion that the question of indemnity is properly before the court.
|sR.S. 22:1385 provides for a legal assignment from any party recovering from LIGA to “his rights under the policy”. He is to “cooperate with the association to the same extent” as he “would have been required to cooperate with the insolvent insurer”. This statutory assignment appears to refer to claims the plaintiff had against the insolvent insurer as distinguished from claims against other third parties who might be liable to the plaintiff. Indeed, paragraphs B and C of that section refer to LIGA pursing such claims against the receiver of the insolvent insurer.
But for sake of argument, even if LIGA’s right of subrogation included every third party not otherwise excluded by the act, it could not prevail against New Hampshire for indemnity in this case. Neither plaintiff nor the insolvent Old Hickory had any right to proceed against New Hampshire under the facts of this case.
Old Hickory, as the primary insurer, had no right of subrogation against New Hampshire, which as a U.M. carrier provided only excess insurance. Plaintiffs’ claim against New Hampshire as an excess carrier, ceased to exist upon settlement of their claims against Old Hickory within its policy limits.
The only remaining possibility LIGA has for indemnity would have to be found in the express terms of the act creating LIGA. While the tenor of the act is to protect LIGA against any claims where other insurance is available, there is no provision therein giving LIGA a cause of action in indemnity against any other party for claims paid by LIGA under these circumstances.”
CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed at the cost of the appellants.
AFFIRMED.

. 615 So.2d 55, (La.App. [1] Cir.1993)