950 P.2d 1147

**A.H., a minor, By and Through her guardian ad litem, David D. WHITE, Plaintiff–Appellant.**

v.

**ARIZONA PROPERTY AND CASUALTY INSURANCE GUARANTY FUND, a subdivision of the Department of Insurance of the State of Arizona, Defendant–Appellee.**

No. CV–97–0109–PR.

Supreme Court of Arizona,
En Banc.

Dec. 31, 1997.

Solomon Relihan & Blake, P.C. by Frank M. Sandler, Kevin J. McAlonan, Phoenix, for Plaintiff–Appellant.

Shimmel Hill Bishop & Gruender, P.C. by Scott J. Richardson, Glenn B. Hotchkiss, Phoenix, for Defendants–Appellees.

## OPINION

FELDMAN, Justice.

We granted review of the court of appeals' opinion to examine that court's order of remand and its award of attorneys' fees to the Arizona Property and Casualty Insurance Guaranty Fund. We have jurisdiction under art. VI, § 5(3) of the Arizona Constitution.

## FACTS AND PROCEDURAL HISTORY

On November 2, 1990, Amanda Harsh, a minor ("Plaintiff"), was traveling in a vehicle driven by her mother, Paula Harsh, and was injured in a collision with the vehicle driven by Thomas Sroka. Harsh was insured with Old Hickory Casualty Insurance Company ("Old Hickory") for both liability and underinsured motorist ("UIM") coverage of $15,000 per person. Sroka was insured with Great Plains Insurance Company ("Great Plains"), including liability coverage of $15,000 per person. Plaintiff obtained a final judgment determining that her total damages were $65,000—sixty percent ($39,000) allocated to Sroka and forty percent ($26,000) allocated to Harsh.

On August 19, 1991, an Old Hickory claims adjuster offered Harsh's $15,000 liability limits to settle Plaintiff's liability claims against her mother and Old Hickory. Three days later, a Louisiana court placed Old Hickory in conservatorship, enjoining the disposition of assets or transaction of business. Plaintiff accepted Old Hickory's offer on September 10. On September 19, Plaintiff agreed with Great Plains to settle her claim against Sroka for the $15,000 liability limit. Before payment was made, however, Old Hickory was declared insolvent in both Arizona and Louisiana, and Great Plains was declared insolvent in Nebraska. Thus, Plaintiff recovered nothing from either company.

The Arizona Property and Casualty Insurance Guaranty Fund ("Fund") succeeded to certain obligations of Great Plains and Old Hickory. Pursuant to A.R.S. §§ 20–661 to 20–680 the Fund is obligated, within limits, to pay all "covered" claims of insolvent insurers. See A.R.S. §§ 20–667 and 20–661(3). A "covered claim" is an unpaid claim arising "out of" and "within the coverage" of a policy written by an insolvent insurer to which the statutes apply. A.R.S. § 20–661(3).

Pursuant to these obligations, on January 26, 1993 the Fund paid $14,900 in satisfaction of Plaintiff's claim against Sroka and his insurer, Great Plains.[1] In March 1994, Plaintiff brought an action against the Fund to enforce her settlement agreement with

---

1. $15,000 less a $100 fee prescribed by § 20–667(B).

Old Hickory. The action went to arbitration. *See* Rule 3.10, Maricopa County Superior Court, Local Rules. Plaintiff was awarded the $15,000 liability limit on Harsh's policy, plus attorneys' fees, costs, and prejudgment interest.

The Fund appealed the arbitrator's decision to superior court, challenging the validity of Plaintiff's settlement agreement with Old Hickory. The Fund also filed an amended answer containing a counterclaim seeking a declaration that § 20–673(B)[2] prevented Plaintiff from recovering further from the Fund under either the liability or UIM coverage of Old Hickory's policy. Plaintiff filed a reply as well as a counterclaim, seeking both the $15,000 UIM and the $15,000 liability limits.

Ruling on cross-motions for summary judgment, the trial judge found for the Fund, holding that: (1) the settlement agreement between Plaintiff and Old Hickory was unenforceable because of the stay issued in the insolvency proceedings, and (2) § 20–673(B) required that the $15,000 recovered under Sroka's Great Plains policy be offset against any recovery due under Old Hickory's liability and UIM coverages. The judge also awarded the Fund $10,108 in attorneys' fees and costs. Plaintiff appealed.

The court of appeals first agreed with the trial judge that the settlement agreement was unenforceable. *A.H. v. Arizona Property & Cas. Ins. Guar. Fund,* 189 Ariz. 378, 384, 943 P.2d 738, 744 (App.1996). It then determined that § 20–673(C),[3] rather than

§ 20–673(B), governed Plaintiff's recovery. Section 20–673(B) was inapplicable because Plaintiff's claim was not covered under the equivalent of more than one guaranty fund— only Arizona's fund covered the claims against the two insurers. *Id.* at 385, 943 P.2d at 745. Under § 20–673(C) and our opinion in *Arizona Property & Cas. Ins. Guar. Fund v. Herder,* 156 Ariz. 203, 751 P.2d 519 (1988), Plaintiff's recovery from the Fund was not subject to an offset based on a single policy limit. *Id.* at 386, 943 P.2d at 746. Thus, the Fund's $14,900 payment under the Great Plains policy only reduced the total damages recoverable, and the Fund remained liable under the Old Hickory policy. *Id.* However, the court indicated that the issue of whether Plaintiff was entitled to recover from the Fund under Harsh's UIM coverage must be decided on remand. *Id.* at 384 n. 4, 943 P.2d at 744 n. 4. Having reversed the trial judge and ruled for Plaintiff on the key issue in the case—the offset question—the court nevertheless affirmed the award of attorneys' fees, holding that Plaintiff failed to indicate how the trial judge abused her discretion in making the award.

## ISSUES

Both parties sought review of the court of appeals' opinion. Believing that the court of appeals correctly decided the offset issue, we denied the Fund's petition for review.[4] We granted review on two issues presented by Plaintiff:

(1) Is a $10,000 award of attorney's fees justified when this action was brought to

---

**2.** § 20–673(B) reads as follows:

Any person having a claim which may be covered under more than one insurance guaranty fund or its equivalent or who is insured under more than one policy, shall seek recovery first from the fund of the place of residence of the insured or, if it is a first party claim for damage to property with a permanent location, from the fund of the location of the property, or shall first exhaust coverage under such other policy. Any recovery pursuant to this article shall be reduced by the amount of the recovery from any other insurance guaranty fund or its equivalent or under another policy. Covered claims by subscribers of an insolvent reciprocal insurer shall not be paid until all subscribers have been assessed pursuant to § 20–791.

**3.** Section 20–673(C) reads as follows:

Where more than one policy may be applicable, a policy issued by the insolvent insurer shall be deemed to be excess coverage. The claimant shall be required to exhaust all rights under other applicable coverage or coverages. Any amount payable on a recovered claim shall be reduced by the amount of such recovery under other applicable insurance.

**4.** We denied review of the following issues presented by the Fund: (1) Whether the court of appeals erred in concluding that § 20–673(B) does not apply in this case; and (2) assuming that § 20–673(B) does apply, whether that subsection bars Plaintiff from recovering "a second and third time" from the Fund as a result of the same accident.

enforce a settlement that the Fund initially agreed to honor and the Court of Appeals has rejected the Fund's only defense to the second contract claim in this action? and

(2) Is remand necessary to decide Plaintiff's right to $15,000 in UIM benefits when the Court of Appeals rejected the Fund's only defense to Plaintiff's UIM claim and she has a judgment confirming that one of the drivers [Harsh] that injured her was underinsured by $24,000?

We have jurisdiction pursuant to A.R.S. § 12–2101(B).

## DISCUSSION

### A. Attorneys' fees

The court of appeals affirmed the trial judge's $10,108 award to the Fund as a "contribution towards attorney fees and costs." *A.H.*, 189 Ariz. at 387, 943 P.2d at 747. The applicable statute provides that in "any contested action arising out of a contract, . . . the court may award the successful party reasonable attorney's fees." A.R.S. § 12–341.01(A). The court of appeals affirmed the award of attorneys' fees "based on the factors enumerated in *Wagenseller*"[5] and on the grounds that by "virtue of our decision upholding the trial court's grant of summary judgment regarding the settlement agreement, the Fund remains the prevailing party on [the contract] issue." *A.H.*, 189 Ariz. at 387 n. 7, 943 P.2d at 747 n. 7. Because we find that the offset issue upon which Plaintiff was successful also arises from contract, we hold the court erred in affirming the trial judge's award of fees.

The court of appeals affirmed the award on the grounds that, despite Plaintiff's success on the key issue in the case—the offset issue—the Fund successfully appealed the contract claim on the settlement agreement. The court explained that its reversal of summary judgment on whether § 20–673 precluded Plaintiff from recovering under the Old Hickory liability and UIM coverage was a separate statutory claim, independent of the contract claim. *Id.* Therefore, the court apparently concluded that the Fund remained the prevailing party on the contract claim and the fee award should stand.

Rare is the insurance case that sounds exclusively in contract. The statutory requirement of § 12–341.01(A) that an action arise out of contract has proven to be a matter of some difficulty for the courts when questions of contract are mixed or combined with other questions, such as tort law or statutory interpretation. Judicial analysis of whether an action is sufficiently contractual to invoke § 12–341.01(A) has aptly focused on the substance of the action and the statutory policy to "mitigate the burden of the expense of litigation to establish a just claim or defense." § 12–341.01(B). When both contract and tort issues are presented, the mere existence of a contract somewhere in the transaction is not sufficient to support a fee award. *See Morris v. Achen Constr. Co., Inc.*, 155 Ariz. 512, 514, 747 P.2d 1211, 1213 (1987) (action for fraud insufficient when alleged fraud is claimed to have resulted in one party entering into contract with third party). The inquiry is whether the tort action could not have existed but for the breach of, or fraudulent inducement of, the contract. *See, e.g., Marcus v. Fox*, 150 Ariz. 333, 335–36, 723 P.2d 682, 684–85 (1986). Similarly, when the cause of action arises from statutory rather than contractual obligations, the "peripheral involvement of a contract does not require the application of § 12–341.01(A). . . ." *O'Keefe v. Grenke*, 170 Ariz. 460, 472–73, 825 P.2d 985, 997–98 (App.1992).

This case presents the novel question of whether an action involving the interpretation of a statutory provision that governs Fund obligations under an insolvent insurer's contract arises out of contract for purposes of § 12–341.01(A). At first glance this action might appear to arise from statute because the dispositive legal issue is resolved by interpreting a statute. However, a closer examination of the purpose and operation of the group of statutes involved reveals otherwise.

Sections 20–661 to 20–680 obligate the Fund to step into the shoes of insolvent insurers and adjust, compromise, settle, and

---

5. *Wagenseller v. Scottsdale Mem. Hosp.*, 147 Ariz. 370, 710 P.2d 1025 (1985).

pay covered claims that arise under insurance contracts. It may also deny claims, and defend and indemnify as necessary. *See* § 20–667(C) ("The fund is deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all the rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent."). As we recognized in *Herder*, however, the rights and obligations of an insolvent insurer and the Fund are not absolutely coextensive but are limited by the statute. 156 Ariz. at 205 n. 3, 751 P.2d at 521 n. 3 ("[T]he Fund is deemed the insurer to the extent of the Fund's obligations on the covered claims, and not to the extent of the insolvent insurer's."). The Fund is therefore a creature of statute that *assumes the contractual obligations* and *rights of insolvent insurers* within the limits of its legislated mandate—in essence, *it exists as the result of a limited, statutorily imposed novation.* Thus, its relationship with parties insured by insolvent carriers is governed by the insured's contract. Section 12–341.01(A) is clearly applicable to coverage disputes between the insured and the Fund because the Fund's obligation is determined under the underlying insurance contract. *See Clark Equip. Co. v. Arizona Property & Cas. Ins. Guar. Fund*, 189 Ariz. 433, 445, 943 P.2d 793, 805 (App.1997) ("Even though the Fund was created by statute ... the essential nature of this action remains one sounding in contract.... [T]he Fund, like any other entity involved in litigation over the terms of a contract, must expect that it may be liable for the prevailing party's attorneys' fees."); *Mancillas v. Arizona Property & Cas. Ins. Guar. Fund*, 182 Ariz. 389, 395, 897 P.2d 691, 697 (App.1994) (awarding fees against the Fund under § 12–341.01(A)).

■ The present dispute focused on the interpretation of a statutory offset provision that governs the Fund's obligations rather than terms of the insolvent insurer's contract. One might argue that the offset issue arises from statute rather than contract. If that were so, the Fund could be considered the successful party on the contractual settlement claim, making the judge's fee award appropriate. The court of appeals reasoned that the "right to insurance payment is based on contract principles; the right to payment of a claim by a guaranty is statutory." *A.H.*, 189 Ariz. at 387 n. 7, 943 P.2d at 747 n. 7. Thus, the court evidently determined that the offset question falls into the latter category. We disagree.

■ While involving an element of statutory interpretation, the issue of offset under § 20–673(C) nonetheless arises from contract. In *Herder*, we carefully examined § 20–673(C) and concluded that this section "is the functional equivalent of an 'other insurance' clause" typical in insurance contracts. 156 Ariz. at 205, 751 P.2d at 521. Of the three types of other insurance clauses employed in the industry,[6] § 20–673(C) is clearly intended "to give the Fund the benefit of a statutorily created excess-type 'other insurance' clause. Regardless of the provisions in either insurer's policy, the Fund will be excess and the other insurer primary." *Id.* at 207, 751 P.2d at 523 (footnote omitted). In other words, § 20–673(C) is a legislated contractual provision that is statutorily imputed to the insolvent insurer's contract under which the Fund assumes its rights and obligations.

Thus, for the purposes of applying § 12–341.01(A), § 20–673(C) is part of the boilerplate of every insurer's written contract and is effective upon an insurer's insolvency. Litigation focusing on this section consequently arises from the contract. Fees have been awarded in numerous Arizona insurance coverage cases that were resolved by interpreting Arizona's statutes governing liability, uninsured motorist, and UIM coverage. *See, e.g., Brown v. State Farm Mut. Auto. Ins. Co.*, 163 Ariz. 323, 788 P.2d 56 (1989) (coverage dispute involving interpretation of § 20–259.01). Therefore, we hold that a dispute concerning policy coverage resolved by interpretation of § 20–673(C) is one that arises from contract. The court of appeals should

---

6. The three types of other insurance clauses are "prorata or sharing clauses, excess clauses, and escape clauses." *Id.* at 206, 751 P.2d at 522 (citation omitted).

have vacated the trial judge's award of attorneys' fees.[7]

## B. Remand to determine UIM claim

The court of appeals ordered that the case be remanded to determine "how payment, if any, under the underinsurance clause of the Old Hickory policy is to be made." *A.H.*, 189 Ariz. at 384 n. 4, 943 P.2d at 744 n. 4. Plaintiff argues that remand is unnecessary because the Fund advanced only the statutory offset defense to her UIM claim, and that argument failed.[8] Because her judgment against Sroka was $39,000, while Sroka's liability coverage was only $15,000, and the Fund has no remaining defenses, Plaintiff argues that she is entitled to Old Hickory's $15,000 UIM limit. That coverage applies to her as a passenger in the covered automobile. The Fund responds that to permit Plaintiff to recover under the UIM terms of her mother's policy would constitute a third recovery from the Fund following the payments under Sroka's and her mother's liability coverages. The Fund argues that this would contravene the offset provided in § 20–673 in the same manner as Plaintiff's recovery under the Old Hickory liability provisions. Thus, the Fund argues that Plaintiff's "claimed entitlement to further recovery from the Fund depends upon the outcome of the Fund's petition for review." Fund's Response to Petition for Review, at 3.

■ We denied review of the Fund's petition, concluding that the court of appeals correctly determined that under § 20–673(C) the Fund is not

> entitled to a limit-against-limit offset. Such an offset scheme was expressly rejected by the *Herder* court when it determined that subsection (C) required an offset against the "total amount payable as damages for the claimant's injuries caused by the covered occurrence," rather than an offset against policy limits. *Since the total damages here exceed the combined policy limits, no duplication of recovery is possible and the Fund is liable under both policies.*

*A.H.*, 189 Ariz. at 386, 943 P.2d at 746 (citation omitted) (emphasis added). *Herder* involved uninsured motorist coverage. Therefore, unless the statute requires different treatment under the offset provisions for UIM coverage, the same reasoning applies and the Fund will be entitled only to an offset against total damages.

Nothing in the § 20–673 non-duplication provisions suggests that UIM coverage be treated differently than uninsured motorist coverage with respect to the operation of the offset against the total damages payable. The purpose of the limits imposed by § 20–673(B) and (C)—to prevent duplicate recovery—are not served by limiting UIM coverage in any manner different from uninsured motorist coverage. Plaintiff will realize no duplication of recovery in this case when the Fund pays her the $15,000 UIM limit on the Old Hickory policy. Under the terms of the respective policies pre-insolvency, Plaintiff was entitled to recover toward her $65,000 damages (1) the $15,000 limit on her mother's liability coverage, (2) the $15,000 limit on Sroka's liability coverage, and (3) the $15,000 limit on her mother's UIM coverage. Because her damages are greater than the aggregate of all three coverages, by recovering under both the UIM and liability provisions, Plaintiff only collects what is due to her under the insurance policies to which the Fund succeeds. There is no duplication of recovery and no need to remand the UIM claim.

## CONCLUSION

Plaintiff requests attorneys' fees and costs for pursuing the appeal. Because Plaintiff is successful on her contract claim for UIM coverage under the Old Hickory policy, we award Plaintiff her reasonable attorneys' fees on appeal. We vacate the portions of the

---

7. We therefore need not address the substantial questions of whether the Fund was in any way a successful party, having lost the case as a whole, or whether the trial judge's fee award would also be improper under the factors stated in *Wagenseller*, 147 Ariz. at 394, 710 P.2d at 1049.

8. The other defenses the Fund raised in the trial court were not raised on appeal.

court of appeals' opinion dealing with the attorneys' fees award and the remand order. The trial court's judgment is reversed, and the case remanded to the trial court with instructions to enter judgment for Plaintiff in accordance with this opinion. On remand, the trial judge may consider any claim by Plaintiff for fees previously incurred in the trial court.

ZLAKET, C.J., JONES, V.C.J., and MOELLER and MARTONE, JJ., concur.