S. Jay **MATSUMARU**, Plaintiff,

v.

**Suguru SATO**, Defendant.

No. CV 07–206–PHX–ROS.

United States District Court, D. Arizona.

Nov. 14, 2007.

S. Jay Matsumaru, Huntington Beach, CA, pro se.

Nathan David Meyer, Stephen M. Dichter, Harper Christian Dichter & Graif PC, Phoenix, AZ, for Defendant.

## ORDER

ROSLYN O. SILVER, District Judge.

Before the Court is Defendant's Motion for Attorneys Fees. For the reasons stated herein, this Motion will be denied.

## BACKGROUND

Defendant Suguru Sato fired Plaintiff S. Jay Matsumaru, an employee of Sato's company Total Lawn Care, on or about May 13, 2004. (Doc. 1). On or about June 26, 2004, Sato and Matsumaru met to resolve employment-related issues arising from Matsumaru's termination. *Id.* During that meeting Sato allegedly assaulted and intentionally inflicted emotional distress ("IIED") upon Matsumaru. *Id.* On September 20, 2004, Matsumaru and Sato entered into a settlement agreement (the "Settlement Agreement"). (Doc. 7, Ex. B).

On December 23, 2006, Matsumaru filed suit seeking damages for the alleged assault and IIED that occurred during the June 26, 2004 meeting. (Doc. 1). The parties agree that the Settlement Agreement finally resolved all disputes arising out of their employment relationship. (*See* Docs. 7 & 15). The parties, however, dispute whether the Settlement Agreement encompassed potential assault and IIED claims. (*See* Docs. 7 & 15).

Sato filed a motion to dismiss on the grounds that the suit was barred by the statute of limitations and the Settlement Agreement. (Doc. 7). The Court granted the motion to dismiss on statute-of-limitations grounds. (Doc. 24). The Court did not reach the question of the Settlement Agreement's effect. *Id.*

Sato filed a timely request for attorneys' fees, arguing that he was entitled to fees under the Settlement Agree as well as statute. (Doc. 26). Matsumaru responded that neither serves a basis for awarding attorneys' fees. (Doc. 34).

## ANALYSIS

### I. SATO'S MOTION

Sato argues that he is entitled to attorneys' fees pursuant to: (1) the Settlement Agreement; and (2) Federal Rule of Civil Procedure 11(b).[1]

---

1. In its Motion for Attorneys' Fees, Sato also sought attorneys' fees under A.R.S. §§ 12–341.01(C), 12–349. (Doc. 26). In his Reply Brief, Sato withdrew these argument. (Doc. 36).

In his Reply Brief, Sato set forth a basis for awarding attorneys' fees, A.R.S. § 12–341.01(A), that was not raised in his Motion for Attorneys' Fees or accompanying memorandum. (*See* Docs. 26, 29). Arguments raised for the first time in a reply brief are improper, and the Court will not consider awarding attorneys' fees under Section 341.01(A). *See Provenz v. Miller*, 102 F.3d 1478 (9th Cir.1996); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir.1994); *Eberle*

## A. Settlement Agreement

██ The Settlement Agreement contained the following clause regarding attorneys' fees:

In the instance of any breach of this Agreement or any provision of this Agreement, the non-breaching party shall be entitled to all costs and expenses in relation to said breach, including all court costs and reasonable attorneys' fees incurred by the non-breaching party in any litigation, arbitration or other proceeding regarding said breach.

(Doc. 7, Ex. B ¶ 11). Sato argues that he is entitled to attorneys' fees because Matsumaru breached the Settlement Agreement by filing suit.

The Court disagrees. The Settlement Agreements's attorneys's-fees provision provides for recovery of attorneys' fees *if* there is a breach of the Settlement Agreement. This was not a breach-of-contract action, a breach-of-contract counterclaim was not filed, nor has the Court found that there was a breach. " 'The mere existence of a contract somewhere in [a] transaction is not sufficient to support a fee award' with respect to a claim that does not itself allege the breach or invalidity of a contract." *Building Innovation Indus., LLC v. Onken,* 473 F.Supp.2d 978, 988 (D.Ariz. 2007) (quoting *A.H. v. Ariz. Prop. & Cas. Ins.,* 190 Ariz. 526, 950 P.2d 1147, 1150 (1997)). Attorneys' fees pursuant to the Settlement Agreement will not be awarded.

## B. Rule 11

██ Federal Rule of Civil Procedure 11(c)(1)(A) provides that "sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b))." This rule also provides a mandatory 21–day safe harbor provision, during which the movant must serve its Rule 11 motion on the opposing party and allow the opposing party 21 days to retract the offending paper, claim, defense, contention, allegation or denial before filing a motion for sanctions with the Court. *Id.*

Sato did not comply with Rule 11's safe harbor provision in two ways. First, Sato did not serve his Rule 11 motion on Matsumaru prior to filing it in court; rather, he gave Matsumaru informal notice of his intent to seek Rule 11 sanctions.[2] (Doc. 29). Such informal notice, however, does not satisfy Rule 11's strict requirement that a motion be served on the opposing party. *See Radcliffe v. Rainbow Constr. Co.,* 254 F.3d 772, 789 (9th Cir.2001) (holding that "although a defendant had given informal warnings to the plaintiffs threatening to seek Rule 11 sanctions, these warnings did not satisfy the strict requirement that a motion be served on the opposing party twenty-one days prior to filing"); *Barber v. Miller,* 146 F.3d 707, 710 (9th Cir.1998) (denying motion for sanctions because, despite multiple warnings as to deficiency of plaintiff's claim, Rule 11 requires service of a motion); *Certain Underwriters at Lloyd's London v. Rauw,* No. C 05–2377, 2007 WL 2729117, at *5 (N.D.Cal. Sept.18, 2007) ("[N]otice of intent [to file for Rule 11 sanctions] in the form of letters or telephone conversations, under Ninth Circuit jurisprudence, does not satisfy the procedural requirements of Rule 11's 'safe

*v. City of Anaheim,* 901 F.2d 814, 818 (9th Cir.1990).

2. "I want to put you on notice that, in my view, your case is so dead-on-arrival as to merit the imposition of sanctions under Rule 11 were you to continue to pursue it notwithstanding your statute of limitations problems." (Doc. 29 (quoting January 24, 2007 Letter from Stephen M. Dichter, counsel for Sato, to Matsumaru)).

harbor' provisions."); *Woods v. Truckee Meadows Water Auth.*, No. 3:06–CV–0189, 2007 WL 2264509, at *3 (D.Nev. Aug.6, 2007) (holding that six-page letter containing a thorough analysis of the facts and law and was, in substance, a Rule 11 motion for sanctions failed to comply with Rule 11's strict procedural requirements).

Second, a motion for sanctions violates the safe-harbor provision if it is filed after the complaint has been dismissed. *Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC*, 339 F.3d 1146, 1150 (9th Cir.2003) (quoting *Barber*, 146 F.3d at 710). This is because such timing does not give the offending party the opportunity to withdraw the offending pleading and thereby escape sanctions. *Id.* Because Sato did not serve his Rule 11 motion until after the complaint was dismissed, the Court cannot award sanctions pursuant to his motion.

Sato is not entitled to sanctions in the form of attorneys fees upon his Rule 11 motion.

## II. *SUA SPONTE*

█ Even though the Court has rejected the grounds upon which Sato has sought sanctions, sanctions may nonetheless be warranted pursuant to Rule 11(c)(1)(B). The Court may impose sanctions on its own initiative after the complaint is dismissed, *Barber*, 146 F.3d at 711, when a party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).

█ It appears Plaintiff's law suit was frivolous he was aware it was, and he acted in bad faith in filing and defending it. Plaintiff should have known that the statute of limitations had expired and that there was no good-faith argument that it should be tolled. Although *pro se* plaintiffs are typically held to less stringent standards because of their lack of legal experience, *see Erickson v. Pardus*, —— U.S. ——, ——, 127 S.Ct. 2197, 2198, 167 L.Ed.2d 1081 (2007), Plaintiff has the benefit of legal education.

Before awarding sanctions, however, the Court must give notice and an opportunity to respond. *Foster v. Wilson*, 504 F.3d 1046, 1053 (9th Cir.2007). Plaintiff will have an opportunity to persuade the Court that sanctions should not be imposed pursuant to Rule 11 and/or the inherent power of the Court.[3]

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Attorneys' Fees (Doc. 26) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff shall appear at a show cause hearing set for November 30, 2007 at 1:30 p.m. to determine if sanctions should be imposed.

---

**3.** *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (district courts have inherent power to impose sanctions, including attorneys' fees); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006) (same); *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir.2001) ("[In *Piper*, 447 U.S. at 766, 100 S.Ct. 2455, the Supreme] Court reiterated the federal courts' inherent power to levy sanctions, including attorneys' fees....").